Good morning, your honors. The argument before the court puts me in a little bit of a difficult position because we filed our written arguments, submitted our written arguments June 6th of 2012, and then January 3rd of this year, this court published U.S. v. Pleasant. And the heart of my argument, as the court knows from my briefings, is that Mr. Andros deserves and is entitled to a new sentencing based on essentially two changes in the law, one being the U.S. S.G. amendments to the crack guidelines, and then secondly, the enactment of the Fair Sentencing Act as well. In my arguments, what I emphasized was that the plea agreement between the government and my client was not based on the U.S. S.G. career offender guidelines, but rather it was based on Section 2D1.1 by way of C1C agreements. But I thought the judge, I mean, the record kind of reflected that everybody knew that the career offender guideline applied. That was the applicable guideline, but they had negotiated a deal. True. And they wanted the district court to go, they wanted to bind the district court to the 20, what was it, 200 months? What was it? What was the sentence? Two hundred months? Seventy months. Seventy months. Seventy months. That's right. I'm sorry. The position that we've taken, however, is that consistent with the language in Freeman, if the parties and if the court, the sentencing court, expressly states that the C1C agreement is based on the guidelines that subsequently changed, Freeman would allow a resentencing notwithstanding an 11C1C agreement. Now, what I'm trying to urge the court or press upon the court is that although there was no express language in the plea agreement about the guidelines of 70 to 87 months being based on the crack cocaine guidelines as they have changed, it certainly was implied. I mean, during the entire course of the arguments for sentencing and even Judge Robart's opinion made it clear that the idea, the intent, the purpose of this range that was crafted by the parties was based as if Mr. Andrews would have been sentenced without having that career offender label. That was the intent of everybody. That was the purpose of how the C1C agreement was structured. But it was also acknowledged, right, that he did qualify as a career offender. That's true. That is true. He did qualify as a career offender, but our argument is based on this implied assertion that the parties, including the court, wanted to disregard that for sentencing and for purposes of accepting the C1C agreement. You have to show that the change that was made about crack cocaine would change the applicable guideline for Mr. Andrews. And that's a difficult position that I'm in because Pleasant seems to answer that question, and the applicable range for Mr. Andrews would be the career offender guidelines. That went unchanged unless this Court considers, and this is another difficult argument, but one thing that I try to impress upon in my arguments is that to some extent the career offender guidelines did change with the enactment of the FSA because Mr. Andrews is no longer facing a maximum of 40 years. He's facing a maximum of 20 years. Did you submit a 28-J letter, or would you like to have supplemental briefing on this Pleasant case? Supplemental briefing on the Pleasant case. I did not submit that letter. I did not submit a 28-J letter. With respect to the Pleasant case. I don't think you had to, but the question is, do you want to do that before we make our decision? I would ask for that, Your Honor, and I just learned as well. I just learned as well that counsel representing Mr. Pleasant has filed a petition for en banc, and I have not had a chance to see that. I just learned that, I think, a couple days ago. My understanding is that the petition was filed on the 28th. But the heart of my argument really goes to this notion, was the range based on the crack cocaine guidelines, and if it was, then certainly Freeman would allow a new sentencing based on that. The difficult part of the analysis that I haven't briefed in my original argument because Pleasant hadn't come out yet, and that is, well, what's the impact of Section 1B.1.10? And that specifically is, well, the difference between a range that is based on a new change in the guideline versus what is the applicable range. And it seems that Pleasant has answered the question that applicable range for someone such as Mr. Pleasant and identical to Mr. Pleasant being Mr. Andrews, the applicable range for these two defendants would be the career offender guidelines. And so the only argument. Counsel? Yes. Counsel, the rule says that it has to be a result of an amendment of the guidelines manual. That would apply to the crack, but with reference to career offender, that has not been reduced by terms of the guidelines manual. Now, there's a change in the statutory maximum, so under the career offender guideline, there has been a reduction, but it isn't tied into a guideline manual. Isn't that correct? That is correct. And the other difficulty that we run into is the FSA, at least the way it's been analyzed in Pleasant and in Baptist, U.S. versus Baptist, and I want to say U.S. versus Sykes, does not apply retroactively. And so the question then becomes until the Supreme Court, until the U.S. Supreme Court sort of revises or adds upon the U.S. Savings Clause or the Savings Clause, I mean, it's a difficult argument to make that the FSA should give a new or a benefit to Mr. Andrews. The question here really comes down to the spirit of the 11C1C agreement, and the spirit of the 11C1C agreement was premised on the crack cocaine guidelines, and I'm convinced that had Mr. Andrews been sentenced post-2011, then the 11C1C agreement would not be 70 months, but it would be. . . Except the spirit of the, if I can just give you a chance to answer, the spirit of the 11C1C agreement seems like a ship that founders on the rock of Pleasant and 11B1.1, unless you have an argument to answer that. And I don't, Your Honor. I don't have it at this point in time. So that's all I can say at this point in time. Honestly, I can't even think of supplemental briefings that I would be able to submit at this point that can somehow convince the panel that even under 1B1.10, the applicable guidelines for Mr. Andrews would not be the career offender guidelines. I just can't make that argument. But you might want us to wait for the mandate to issue in Pleasant if there's a PFREB. And that's right. And I would ask for that because my understanding is that there has been a petition for en banc review. If you want to hold a little time for rebuttal to answer your colleague when she's done. Sure. Thank you. Good morning, Your Honors. May it please the Court. I just ask you at the outset, should we be holding this case for the mandate in Pleasant? Because it looks like that case is very important to resolving this. Or should there be supplemental briefing about it? I think what I'm hearing Appellant saying is there's no brief he could write on right now. Well, Your Honor, I think Pleasant controls. And so to the extent that it controls, if you – it is quite clear that a petition for en banc review was filed on the 30th of January. No call has yet been made for briefing by the government. But if this Court were to hold this case for the mandate in Pleasant, then we would know that Pleasant absolutely would control. I mean, as it sits right now, it does control unless this Court were to take Pleasant en banc. Okay. Thank you. Go ahead with your argument. Your Honor, I won't belabor this very long because I do think Pleasant controls. In this case, there was no doubt that Mr. Andrus was a career offender. The Court calculated the guideline as a career offender. You'll find that in the excerpts of record at page 34. And ironically, the only thing that talked about 2D1.1 in this case is in the government's sentencing memorandum, where the counsel I think correctly pointed out to the Court that the parties had negotiated the agreement as roughly what he would have gotten had he been scored under 2D1.1. Ironically, they got it wrong. His 2D1.1 guideline range, had it been so calculated, would actually have been higher because they miscalculated his criminal history. But at the end of the day, it is quite clear that the applicable guideline range is the career offender guideline. I would also point out, however, that under Freeman, I suppose if this Court were to find and take Pleasant en banc and for some reason conclude to the contrary of the decision as it's currently written, I think one could also in this case say his sentence under Freeman would not qualify him because the parties, while they may have considered it in negotiating this plea agreement, it was not his 2D1.1 guideline. So you could probably also say this was not based on 2D1.1. So for those reasons, Your Honors, we would ask this Court to affirm. I'd be happy to answer other questions. I have no questions, Ms. Brunner. How about Judge Fischer or Judge Pius? No, I'm fine. Thank you. Thank you, Your Honors. Thank you very much. I have nothing further to add. Okay. Well, then I'll thank Mr. Cantor and Ms. Brunner. I can't wish you a safe return to another state, but we even appreciate Mr. Cantor coming from Everett and Ms. Brunner coming from her busy schedule in Seattle. So thank you. Thank you. Thank you both. The case of U.S. v. Andrews shall be submitted.
judges: Fisher, Gould, Paez